UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EARL D. SMITH, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04096-JMS-MJD |
| | ) | |
| DENIS MCDONOUGH, *Secretary, Veterans Administration*, and BRIAN HANCOCK, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## **ORDER**

*Pro se* Plaintiff Earl Smith initiated this lawsuit against Robert Wilkie, the Secretary of the Veterans Administration ("VA"), and Brian Hancock, the Director of the Richard L. Roudebush VA Medical Center in Indianapolis ("Roudebush VAMC"),[1] alleging discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act (the "ADEA"), and the Americans with Disabilities Act ("the ADA") stemming from his employment at Roudebush VAMC. [Filing No. 7-1.] After screening the Second Amended Complaint, the Court determined that only Mr. Smith's discrimination claims under Title VII, the ADEA, and the ADA[2] should proceed. [Filing No. 8.] The VA has filed a Motion for Summary Judgment, [Filing

---

[1] Precisely who Mr. Smith intends to sue in this lawsuit is not clear. In his initial Complaint, Mr. Smith listed Robert Wilkie, the then-Secretary of the VA as the only Defendant. [Filing No. 1.] In his First Amended Complaint and Second Amended Complaint, Mr. Smith listed Mr. Wilkie and Mr. Hancock as Defendants. [Filing No. 5; Filing No. 9.] Both Mr. Wilkie and Mr. Hancock were served, but Mr. Hancock has not responded to the Second Amended Complaint, and the Assistant United States Attorney representing Mr. Wilkie filed an appearance only on behalf of Mr. Wilkie. [Filing No. 14.] However, in his Response to the pending Motion for Summary Judgment, Mr. Smith lists Denis McDonough, who has replaced Mr. Wilkie as the Secretary of the VA, as the only Defendant.

[2] Because the alleged discrimination in this case occurred as part of a federal program, Mr. Smith's claim should have been brought pursuant to the Rehabilitation Act (the "RA"), and the Court will

1

No. 39], and Mr. Smith has filed a Cross-Motion for Summary Judgment, [Filing No. 44], which are now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts

---

refer to Mr. Smith's claims related to his disabilities as being brough pursuant to the RA. *See Kurowski v. Shinseki*, 557 F. App'x 549, 552 (7th Cir. 2014) (applying the RA to a discrimination claim against the VA, and noting that the same substantive standards apply to claims brought under the RA and claims under the ADA).

are not outcome-determinative. *Montgomery v. Am. Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

In support of its Motion, the VA submitted eight exhibits, which it summarized with a list of undisputed facts. [Filing No. 35; Filing No. 36.] Mr. Smith does not dispute any of the facts or evidence presented by the VA; in fact, he adopts the statement of facts and evidence as his own. [Filing No. 44 at 1.] Mr. Smith states that "Defendant has presented to the court undisputed facts

3

that support my claim to possibly overlook, that these undisputed facts are in my favor." [Filing No. 44 at 2.]

### A. The Parties

#### 1. *Roudebush VAMC*

Roudebush VAMC is a hospital in the Indiana VA system, and is located in Indianapolis. [Filing No. 39 at 3.] Roudebush VAMC participates in a Compensated Work Therapy ("CWT") program, which helps disabled veterans by providing job training and rehabilitation services. [Filing No. 35-1 at 20; Filing No. 35-1 at 83.]

#### 2. *Earl Smith*

Earl Smith is a 68 or 69 year old year old African-American male, and he suffers from recurring conjunctivitis, cataracts that required surgery, and clinical depression. [Filing No. 9 at 5 (listing birth year as 1952); Filing No. 35-1 at 73-79.] Mr. Smith started at Roudebush VAMC in 2002 as part of the CWT program. [Filing No. 35-1 at 20.] He became a full-time employee with Roudebush VAMC in 2005, working as a Program Support Assistant for Supply Inventory Management Services, ("SIMS").[3] [Filing No. 35-1 at 44.] Mr. Smith's duties included coordinating the distribution of hospital supplies and devices, and keeping the time "for almost 40 other employees for that particular unit." [Filing No. 35-1 at 45.]

In 2011, in response to an Equal Employment Opportunity Commission complaint, the VA changed Mr. Smith's job title to Medical Supply Clerk, and he received a corresponding pay increase. [Filing No. 35-1 at 50-52.] In November 2014, Mr. Smith "involuntarily resigned" because he felt that his work conditions were "intolerable." [Filing No. 35-1 at 40-41.]

---

[3] At the time Mr. Smith started working in SIMS, the unit was called Supply Processing and Distribution. [Filing No. 35-1 at 42.] At some point during his employment, however, the unit was renamed to SIMS.

4

### B. Mr. Smith's Coworkers at Roudebush VAMC

*1. Ted Korupp*

Ted Korupp is a Caucasian male and "possibly in his forties, fifties." [Filing No. 35-1 at 134-35.] At all times relevant to this case, Mr. Korupp was the Chief of Logistics at Roudebush VAMC, which was a position within the SIMS department, and oversaw the SIMS department at the time because the position of Chief of SIMS was vacant. [Filing No. 35-1 at 72.] Mr. Korupp never made any disparaging comments to Mr. Smith involving race, age, disability, or his previously filed EEOC Complaint. [Filing No. 35-1 at 135-36.]

*2. Teakila Thompson*

Teakila Thompson is an African-American female who Mr. Smith believes was around forty at the time of the events at issue. [Filing No. 35-1 at 99.] Ms. Thompson worked for Roudebush VAMC as a Lead Supply Technician from 2008 until 2011. [Filing No. 35-1 at 107-08.] During her time as Lead Supply Technician, Ms. Thompson was occasionally required to be on-call and work extended shifts and weekend shifts. [Filing No. 35-2 at 5-6.] In 2011, Ms. Thompson left her role as Lead Supply Technician for a position in "purchasing" at Roudebush VAMC. [Filing No. 35-1 at 107-08.] Ms. Thompson never made any remarks about Mr. Smith's race or disabilities, and she never made any disparaging remarks about his gender. [Filing No. 35-1 at 101.] Ms. Thompson would frequently say, "I hate old people," but she never directed those remarks to Mr. Smith. [Filing No. 35-1 at 101.]

*3. Leroy Dinkins*

5

Leroy Dinkins is an African-American male who is "approximately the same age" as Mr. Smith. [Filing No. 35-1 at 111.] Like Mr. Smith, Mr. Dinkins began his employment with Roudebush VAMC under the CWT program and eventually became a regular employee, working as a Medical Supply Aide. [Filing No. 35-1 at 59-60; Filing No. 36-1 at 2.] In 2011, Mr. Dinkins was promoted and replaced Ms. Thompson as Lead Supply Clerk, and he received an accompanying pay increase. [Filing No. 36-1 at 2.] In September 2012, Mr. Dinkins received another pay increase. [Filing No. 36-2 at 2.] Mr. Dinkins never made any disparaging remarks about Mr. Smith's race, age, gender, or disability. [Filing No. 35-1 at 111.]

    *4. Robin McKee*

Robin McKee is an African-American female who Mr. Smith believes to have been in her forties during the relevant time period. [Filing No. 35-1 at 87.] Ms. McKee was the immediate supervisor of all SIMS employees, including Mr. Smith, Ms. Thompson, and Mr. Dinkins. [Filing No. 35-1 at 70.] Ms. McKee never made any disparaging remarks to Mr. Smith about race, gender, or disabilities. [Filing No. 35-1 at 87-89.]

    **C. Ms. Thompson's Tenure as Lead Supply Technician**

In the course of his timekeeping duties, Mr. Smith noticed that Ms. Thompson would leave early and arrive late without being required to use her leave time. [Filing No. 9 at 7.] Ms. Thompson did not conceal her arrival or departure times, and she would even say goodbye to Ms. McKee prior to leaving. [Filing No. 35-1 at 100.] Mr. Smith felt "paranoia" because Ms. Thompson knew that "he knew she was leaving early and arriving late," and he felt that her conduct was "discrimination against everybody in the department." [Filing No. 35-1 at 103-104.] Mr. Smith talked to Ms. McKee about Ms. Thompson's comings and goings, and Ms. McKee informed Mr. Smith that Ms. Thompson was being "accommodated." [Filing No. 35-1 at 104.] Ms.

6

Thompson was given permission by a supervisor to work a modified schedule for childcare purposes without having to use any type of leave. [Filing No. 35-4 at 4.]

### D.  Mr. Dinkins' Promotion to Lead Supply Technician

In "the middle of 2011," Mr. Korupp announced in a staff meeting that Ms. Thompson would be leaving her position and that the Lead Supply Technician position would be open for anyone to apply. [Filing No. 35-1 at 114.] Mr. Korupp was responsible for the final decision regarding who would replace Ms. Thompson. [Filing No. 35-1 at 115.] However, Mr. Smith "heard [Ms. Thompson] tell [Mr.] Korupp" to select Mr. Dinkins for the promotion, and Ms. Mckee "went along with it." [Filing No. 35-1 at 115.] Mr. Smith believed that Mr. Dinkins and Ms. Thompson "hung out together" and were part of a "clique." [Filing No. 35-1 at 115.] After Ms. Thompson left the Lead Supply Technician role, Mr. Smith noticed through his timekeeping duties that Mr. Dinkins was acting as the Lead Supply Technician because Mr. Dinkins was on call and working weekend shifts. [Filing No. 35-1 at 116-118.]

### E.  This Lawsuit

Mr. Smith initiated this lawsuit on October 2, 2019. [Filing No. 1.] After two rounds of screening, Mr. Smith filed his Second Amended Complaint on January 29, 2020. [Filing No. 9.] The Court determined that Mr. Smith's "claims for discrimination under Title VII, the ADA, and the ADEA" could proceed. [Filing No. 12 at 2.] On April 9, 2021, the VA filed a Motion for Summary Judgment, [Filing No. 35], Mr. Smith filed a Response and Cross-Motion for Summary Judgment (Mr. Smith's "Response/Cross-Motion"), [Filing No. 44], and the VA filed a Reply in Support of its Motion, which also responds to Mr. Smith's Motion, (the "VA's Reply/Response"), [Filing No. 45]. Mr. Smith filed a "memoranda to support [his] response to [the VA's] motion for

7

summary judgment," which the Court construes as a reply in support of his Motion. [Filing No. 47.]

## III.
### THE VA'S MOTION FOR SUMMARY JUDGMENT

The VA argues that Mr. Smith's allegations that Mr. Dinkins was given a higher pay grade or was paid more than Mr. Smith in 2011 for the same work are demonstrably false. [Filing No. 39 at 12.] It argues that their personnel records demonstrate that Mr. Smith was paid more than Mr. Dinkins until September 2012, and even though Mr. Dinkins's pay grade was increased at that time, Mr. Dinkins "still earned thousands of dollars less per year than Mr. Smith." [Filing No. 39 at 12 (citing Filing No. 36-2 and Filing No. 35-6).] The VA further argues that even if Mr. Dinkins was paid more than Mr. Smith, they were not performing the same job. [Filing No. 39 at 12-13.] It notes that Mr. Dinkins was the Lead Supply Technician and was required to work weekends and extended shifts, while Mr. Smith was not the Lead Supply Technician and was not required to work weekends or extended shifts. [Filing No. 39 at 13.] The VA argues that to the extent Mr. Smith bases his claims on Mr. Dinkins's promotion to Lead Supply Technician, those claims fail because Mr. Dinkins is also African-American and is "approximately the same age" as Mr. Smith. [Filing No. 39 at 14 (quoting Filing No. 35-1).] Moreover, the VA argues that some of Mr. Smith's alleged disabilities arose only after Mr. Dinkins's promotion, and that his other alleged disabilities have not been diagnosed by any medical professionals and do not impose a "'substantial' limitation in his daily life." [Filing No. 39 at 16.] In any event, the VA argues, under the RA, Mr. Smith "must show that he was subjected to discrimination 'solely by reason of . . . his disability,'" but he has not and cannot produce any evidence that his alleged disabilities played any role in Mr. Dinkins's promotion to the Lead Supply Technician role. [Filing No. 39 at 16.]

As for Mr. Smith's claims based on Ms. Thompson's work, the VA argues that Mr. Smith admitted that Ms. Thompson's schedule "didn't impact him." [Filing No. 39 at 18 (quoting Filing No. 35-1) (alterations omitted).] It argues that to the extent her late arrivals and early departures caused Mr. Smith "paranoia," that feeling "does not entitle him to sue the VA." [Filing No. 39 at 18.] Regardless, the VA argues, Ms. Thompson's schedule was not based on discrimination and was instead expressly approved by the Assistant Chief to allow Ms. Thompson to attend to her childcare responsibilities. [Filing No. 39 at 18.] The VA also notes that Ms. Thompson is African-American, "so there is no basis for Mr. Smith's allegations of race discrimination." [Filing No. 39 at 19.] Finally, to the extent Mr. Smith intends to base his age discrimination claim on Ms. Thompson's alleged comments that she "hates old people," the VA argues that her "comments are completely divorced from Mr. Smith's allegations in the [C]omplaint, which are about Ms. Thompson's schedule." [Filing No. 39 at 19.] Moreover, it argues, the idea that Ms. Thompson harbored some sort of animus against old people, which led to discrimination against Mr. Smith, is undercut by Mr. Smith's assertion that Ms. Thompson recommended Mr. Dinkins for the Lead Supply Technician because Mr. Dinkins is approximately the same age as Mr. Smith. [Filing No. 39 at 20.]

Mr. Smith's Response/Cross-Motion is two pages. [Filing No. 44.] In his Response/Cross-Motion, he "adopt[s] and incorporat[es] by reference [the VA's] designated evidence . . . and Statement of Undisputed Facts," in support of his Response. [Filing No. 44 at 1.] Mr. Smith argues that the VA "has presented to the court undisputed facts that support [his] claim." [Filing No. 44 at 2.] He contends that the VA asks the Court to overlook undisputed facts that favor him and that by doing so, the VA has made a decision on its motion a question of law. [Filing No. 44 at 2.] Finally, he argues that the VA's Motion is not signed. [Filing No. 44 at 2]

In its Reply/Response, the VA argues that Mr. Smith "does not challenge any of the facts set forth" in its Statement of Material Facts Not in Dispute. [Filing No. 45 at 1.] Accordingly, the VA argues, Mr. Smith has waived any right to challenge the veracity of those facts and the Court should accept them as true. [Filing No. 45 at 2.] Finally, the VA notes that its Motion for Summary Judgment is signed by its counsel. [Filing No. 45 at 2.]

In his Reply, Mr. Smith clarifies that he wishes to adopt the VA's facts and evidence as his own. [Filing No. 47 at 1.] He argues that the facts do not support the VA's position, and contends that the VA fails to state that the facts "are undisputed to support [his] claim," and by failing to do so "is suggesting a decision on its motion is only a question of law." [Filing No. 47 at 2.]

### A. Legal Framework

As a general proposition, "the singular question that matters in a discrimination case is: Whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (*quoting Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 894 (7th Cir. 2018); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In adopting the singular question, *Ortiz* dispensed with the old "direct- and indirect-framework" as it relates to the "proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect.'" 834 F.3d at 766. However, the Seventh Circuit has not entirely done away with separate tests or methods to analyze discrimination cases, and it has stated that "the well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson*, 892 F.3d at 894. *See also McDaniel*, 940 F.3d at 368.

Under the *McDonnell Douglas* framework, "the plaintiff must show evidence that '(1) [he] is a member of a protected class, (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees who were not members of [his] protected class were treated more favorably.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 720 (7th Cir. 2018) (quoting *Carson v. Lake Cty.*, 865 F.3d 526, 533 (7th Cir. 2017)). "If the plaintiff meets each element of [his] prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" Id. at 719–20 (quoting *Carson*, 865 F.3d at 533).

### B. Gender/Sex Discrimination Under Title VII

To the extent that Mr. Smith initially asserted a claim for gender/sex discrimination,[4] [Filing No. 9 at 5], he has abandoned that claim, [Filing No. 35-2 at 2 (Interrogatory No. 3: "Why do you believe you were subjected to discrimination during your employment at [the] Roudebush VAMC on the basis of gender?" A: "I am not claiming gender discrimination.")]. Therefore, the Court **GRANTS** the VA's Motion for Summary Judgment on Mr. Smith's Title VII gender/sex discrimination claim.

### C. Disability Discrimination Under the RA

As noted above, the first element of a discrimination claim based on disability is that the plaintiff suffer from a disability. The RA defines "disability" as a "physical or mental impairment that constitutes or results in a substantial impediment to employment" or "the meaning given it in

---

[4] In his Second Amended Complaint, Mr. Smith checked the box indicating that he intended to assert a "color gender/sex" claim, and he wrote in "Brown, Male." [Filing No. 9 at 5.] In light of Mr. Smith's response to the VA's interrogatories, it appears that by checking that box, Mr. Smith intended only to pursue a discrimination claim on the basis of race.

11

[the ADA]." 29 U.S.C. § 705. The statutory definition of "disability" is not just a "physical or mental impairment that substantially limits one or more major life activities," but it also includes "a record of such an impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). To be "regarded as having such an impairment," the impairment may be an "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

When asked to explain the bases for his discrimination claims based on disability, Mr. Smith listed the following disabilities: (1) clinical depression, dating back to July 1976; (2) conjunctivitis, dating back to 2012; and (3) cataracts, also dating back to 2012. [Filing No. 35-2 at 6.] In addition, Mr. Smith stated that he "need[s] to apply compresses to my eyes frequently, partially blind from September 2012 to April of 2013." [Filing No. 35-2 at 6.]

However, as the VA notes, Mr. Smith's claims stem from Ms. Thompson's time as Lead Supply Technician and Mr. Dinkins's promotion to Lead Supply Technician after Ms. Thompson's departure, all of which occurred prior to 2012. [Filing No. 35-2 at 5-6.] Accordingly, to the extent Mr. Smith's disability discrimination claims are based on his conjunctivitis or cataracts, those disabilities, assuming they are disabilities within the meaning of the RA, did not yet exist at the time of the challenged conduct.

With respect to clinical depression, Mr. Smith's deposition testimony reveals that when he started in the CWT program, he was regarded as being disabled due to his clinical depression. [Filing No. 35-1 at 83-86.] As part of the CWT, Mr. Smith was required to meet with a psychiatric nurse, who was similar to a counselor. [Filing No. 35-1 at 84.] Mr. Smith met with the psychiatric nurse from 2002 until around "2008, 2009, 2010." [Filing No. 35-1 at 84.] Mr. Smith testified that when he became a "regular employee," he was no longer in the CWT program and it was no

12

longer mandatory that he meet with a psychiatric nurse. [Filing No. 35-1 at 84-85.] In addition, when he was in the CWT Program, he was taking medication for his depression. [Filing No. 35-1 at 89.]

Accordingly, the Court finds that Mr. Smith was disabled as defined by the ADA and RA. In addition, the VA does not argue that Mr. Smith failed to meet its legitimate expectations, and it is undisputed that Mr. Dinkins was not disabled and that he was treated more favorably than Mr. Smith. Whether Mr. Smith suffered an adverse employment action, and determining precisely what actions alleged by Mr. Smith qualify as adverse employment actions, are not as straight forward. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits," *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007), must "materially alter the terms or conditions of employment," *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012), and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009).

As the VA notes, Mr. Smith's allegations regarding Ms. Thompson's time as Lead Supply Technician do not identify any adverse employment actions. Prior to Ms. Thompson's departure from that role, Mr. Smith did not seek or desire a promotion, was not reassigned or tasked with different responsibilities, and the terms and conditions of his employment were not otherwise materially altered. His allegation that he suffered "paranoia" because of Ms. Thompson's modified schedule amounts to a mere inconvenience.

Mr. Dinkins's work and promotion to the Lead Supply Technician position, on the other hand, presents a different scenario. Mr. Smith alleges that Mr. Dinkins was paid more than Mr.

Smith despite doing the same work. The evidence clearly shows, however, that Mr. Dinkins was not paid more than Mr. Smith, and Mr. Smith testified that he and Mr. Dinkins did not have the same duties. [*Compare* Filing No. 35-6 (showing Mr. Smith's rate of pay as of July 2011) *with* Filing No. 36-1 (showing Mr. Dinkins's rate of pay as of November 2011); Filing No. 35-1 at 61 (Mr. Smith testifying that he was not a supply technician and did not have the same duties as a supply technician).] Therefore, Mr. Smith's allegation that Mr. Dinkins was paid more for the same work is unsupported by the record and is not an adverse employment action.

Mr. Smith also alleges that Mr. Dinkins was improperly promoted instead of him. It is not clear from the VA's briefing (and Mr. Smith's lack of briefing) whether the Lead Supply Technician role was open for all to apply, whether it should have been open for all to apply, whether Mr. Smith expressed an intention to apply, and whether Mr. Smith did in fact apply. In the interest of efficiency and pursuant to the summary judgment standard articulated above, the Court concludes that Mr. Smith has met his burden of demonstrating that he suffered an adverse employment action as it relates to Mr. Dinkins's promotion (and Mr. Smith's lack of promotion) to the Lead Supply Technician position. Accordingly, Mr. Smith has established a prima facie case of discrimination on the basis of disability, and the burden shifts to the VA to offer a legitimate, non-discriminatory reason for Mr. Dinkins's pay and promotion.

The VA notes that Mr. Smith testified that both Ms. Thompson and Mr. Korupp believed that Mr. Dinkins was the correct choice to fill the vacant Lead Supply Technician position. [Filing No. 35-1 at 114; Filing No. 35-1 at 134.] The VA also notes that there is no indication that Ms. Thompson and Mr. Korupp recommended Mr. Dinkins because of some discriminatory animus. [Filing No. 39 at 16.] Accordingly, the VA has articulated legitimate, non-discriminatory reasons

for Mr. Dinkins's promotion, and the burden shifts back to him to produce evidence that the VA's proffered reasons were pretextual for discrimination.

Mr. Smith fails to offer any evidence of pretext. Instead, he relies on the VA's evidence, and he fails to direct the Court to pieces of the VA's evidence that show pretext. "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The Court gave Mr. Smith the benefit of the doubt in finding that he established a prima facie case of discrimination on the basis of his disability. However, Mr. Dinkins offers no evidence of his own, and does not direct the Court to evidence presented by the VA that shows that the VA's reasons are pretextual. Accordingly, the VA's Motion for Summary Judgment is **GRANTED** as to Mr. Smith's claims for discrimination on the basis of disability.

### D. Race Discrimination Under Title VII

The VA does not dispute that Mr. Smith is a member of the protected classes with respect to his race, nor does it contend that Mr. Smith was not meeting its legitimate expectations, [*See* Filing No. 39 at 14], and the Court the Court has already determined that Mr. Smith suffered an adverse employment action. Thus, the Court turns its attention to whether Mr. Smith has identified a similarly situated employee outside of his protected class who was treated more favorably than him. Based on his Amended Complaint, Mr. Smith contends that Mr. Dinkins and Ms. Thompson fit that mold.

Mr. Smith admits that he, Mr. Dinkins, and Ms. Thompson are African-American. [Filing No. 35-1 at 111; Filing No. 35-4 at 1.] Thus, they are not outside of Mr. Smith's protected class of are therefore insufficient for Mr. Smith's race discrimination claim. Accordingly, Mr. Smith

15

fails to establish a prima facie case of discrimination, and the Court **GRANTS** the VA's Motion as to that claim.

### E. Age Discrimination Under the ADEA

As with his race discrimination claim, The VA does not dispute that Mr. Smith is a member of the protected classes with respect to his age, nor does it contend that Mr. Smith was not meeting its legitimate expectations, [*See* Filing No. 39 at 14], and the Court will again assume that Mr. Smith has presented evidence of an adverse employment action. The issue is again whether Mr. Dinkins and Ms. Thompson are similarly situated employees, outside of his protected class, who were treated more favorably than him.

As for Mr. Dinkins, Mr. Smith admits that he and Mr. Dinkins are "approximately the same age." [Filing No. 39 at 8 (citing Filing No. 35-1 at 111 (Mr. Smith testifying at his deposition: "Q: What was [Mr. Dinkins's] race? A: He's African-American. Q: He was a man, of course. A: That's right. Q: How old was he approximately? A: Approximately the same age. At that time probably in his fifties.").] Accordingly, Mr. Dinkins is not outside of Mr. Smith's protected class with respect to age and cannot serve as a comparator for that claim.

Ms. Thompson, on the other hand, "was probably in her forties." [Filing No. 35-1 at 87.] Although she is outside of Mr. Smith's protected class, she must still be similarly situated. For comparator employees to be "similarly situated" to a plaintiff, they "'must be directly comparable to the plaintiff in all material respects,' but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009)). "Formal job titles and rank are not dispositive" as to whether employees are similarly situated. *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011). In determining whether employees are similarly situated, courts "consider all relevant factors,"

including whether the employees "held the same position, had the same supervisor, [were] subject to the same standards, and engaged in similar conduct." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014).

The undisputed evidence establishes the following: Ms. Thompson worked as the Lead Supply Technician in SIMS from 2008 through 2011. [Filing No. 35-1 at 107-08.] During that time, Mr. Smith worked as a Program Support Assistant for SIMS; he was not a supply technician. [Filing No. 35-1 at 44; Filing No. 35-1 at 61.] Ms. McKee supervised both Mr. Smith and Ms. Thompson, and Ms. Thompson was never Mr. Smith's supervisor. [Filing No. 25-1 at 103.] However, as Lead Supply Technician, Ms. Thompson's duties were different than the other supply technicians in SIMS. [Filing No. 35-2 at 5.] For example, the Lead Supply Technician alternated "being on call" with the supervisor, was on call during weekends, occasionally worked weekend shifts, and occasionally worked extended shifts up to ten hours. [Filing No. 35-2 at 5-6.] Generally, the Lead Supply Technician "was responsible for making sure the other supply technicians did their job." [Filing No. 35-1 at 61.] In addition, the Lead Supply Technician also served as an Operating Room technician until 2011. [Filing No. 35-1 at 64.] In that dual role, the Lead Supply Technician "would pull the surgery sets, they would pull the various instrument sets, for a particular procedure," as well as "stock[ing] units," cleaning, and sterilizing. [Filing No. 35-1 at 65.] Mr. Smith's duties, on the other hand, "were to coordinate the delivery of supplies throughout the hospital, monitor the use of the reusable equipment by patients throughout the hospital . . . . I would answer the phone taking orders for various supplies needed throughout the hospital. . . . I was the timekeeper and I kept the time for almost 40 other employees for that particular unit and I was the backup timekeeper for the surgery services or other units." [Filing No. 35-1 at 45.]

17

These undisputed facts, when applied to the factors identified above, show that Mr. Smith and Ms. Thompson were not similarly situated. Although they had the same supervisor, the commonalities end there. Ms. Thompson was the Lead Supply Technician, and Mr. Smith was not a supply technician at all. In addition, their duties were markedly different with very little, if any, overlap. Although they may have worked together in the same unit, Mr. Smith's duties were primarily timekeeping and delivering equipment to the supply technicians. Finally, Ms. Thompson and Mr. Smith were subject to different standards. Ms. Thompson was required to be on call, to work weekends, and to work extended shifts. Mr. Smith was not. Accordingly, Mr. Smith and Ms. Thompson are not similarly situated such that she could serve as a comparator for his race and age related discrimination claims. Therefore, Mr. Smith cannot establish a prima facie case of age discrimination, and the VA's Motion is **GRANTED** as to that claim.

## IV.
### MR. SMITH'S MOTION FOR SUMMARY JUDGMENT

As noted above, Mr. Smith does not present any evidence or argument in support of his Motion. [Filing No. 44.] Accordingly, for the reasons set forth above with respect to the VA's Motion, Mr. Smith's Motion for Summary Judgment is **DENIED**.

## V.
### CONCLUSION

*Pro se* complaints such as that filed by Mr. Smith are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted). However, *pro se* litigants are still required to provide direct or indirect evidence to support their claims. In response to the VA's Motion for Summary Judgment, Mr. Smith incorporated the VA's statement of facts and merely concluded that the facts support his viewpoint. Even viewing the facts in the light most favorable to Mr.

Smith, the Court concludes that he has failed to establish a genuine issue of material fact concerning his discrimination claims.

Therefore, the VA's Motion for Summary Judgment, [35], is **GRANTED**, and Mr. Smith's Cross-Motion for Summary Judgment, [44], is **DENIED**. In addition, the same rationale for dismissal discussed in this connection with the VA's Motion for Summary Judgment would apply to the claim(s) against Mr. Hancock. Mr. Smith shall have through **August 30, 2021,** in which to **SHOW CAUSE** why any claim(s) against Mr. Hancock should not be *sua sponte* dismissed without prejudice for the same reasons the claims the VA are being dismissed. *See* Fed. R. Civ. P. 56(f) (allowing court to grant summary judgment to a nonmovant after giving notice and an opportunity to respond); *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001 (7th Cir. 2013) ("Many decision in this circuit hold that a district judge must notify the litigants and invite the submission of evidence and legal arguments, before resolving a case on a ground the parties have bypassed or using a procedure they did not propose."). The Court will direct the issuance of final judgment after the claim(s) against Mr. Hancock is resolved.

Date: 7/29/2021

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Earl D. Smith
2144 N. Kitley Ave.
Indianapolis, IN 46219